

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **In re:**<br><br>**Noble Health Real Estate LLC,**<br><br>Debtor. | Case No.  23-20051-DRD<br>Chapter 11 |

## PLAN OF REORGANIZATION

**COMES NOW**, Noble Health Real Estate LLC ("Debtor") and, pursuant to sections 1121 and 1123  and the Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), proposes this Plan of Reorganization (the "Plan") for the resolution of the Claims against Debtor.  Debtor is the proponent of this Plan within the meaning of sections 1129 of the Bankruptcy Code.

### ARTICLE I
### INTRODUCTION

1.1    **Disclosure Statement**.  Contemporaneously with the filing of the Plan, Debtor filed a Disclosure Statement for the Plan as required by section 1125 of the Bankruptcy Code. The Disclosure Statement contains Debtor's history, financial information regarding Debtor and its assets, and a solicitation of acceptances of this Plan.

1.2    **Property and Claims**.  This Plan deals with all property of Debtor and provides for treatment of all Claims against Debtor and its property.

### ARTICLE II
### DEFINITIONS

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article of the Plan.  Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

The following terms, when used in this Plan, shall have the following meaning:

2.1     "**Administrative Expense Claim**" means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

2.2     "**Allowed Claim**" shall mean a Claim or any portion thereof that is enforceable against a Debtor or enforceable against the property of a Debtor under sections 502 or 503 of the Bankruptcy Code.

2.3     "**Allowed Secured Claim**" shall mean the amount of the allowed Claim held by parties secured by property of a Debtor which is equal to the amount provided by the Plan unless such other amount is stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

2.4     "**Allowed Unsecured Claim**" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

2.5     "**Assets**" means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of a Debtor (including without limitation, all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such property exists on the Effective Date or thereafter.

2.6     "**Avoidance Action**" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.7     "**Ballot**" means each of the ballot forms that are distributed with the Plan to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

2.8     "**Bankruptcy Case**" means the chapter 11 case initiated by a Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

2.9    "**Bankruptcy Code**" means title 11 of the United States Code.

2.10    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of Missouri.

2.11    "**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure.

2.12    "**Bar Date**" means September 22, 2023, the date the Court established as the deadline for nongovernmental entities to file a proof of claim pursuant to Docket No. 66) (the "Bar Notice"). The terms of the Bar Notice will continue in full effect after the Effective Date.

2.13    "**Business Day**" means any day on which the commercial banks are required to be open for business in Kansas City, Missouri and which is not a weekend or legal holiday recognized by the Bankruptcy Court.

2.14    "**Case**" means In re Noble Health Real Estate, LLC, Case No. 23-20051-drd (U.S. Bankruptcy Court, Western District of Missouri).

2.15    "**Cash**" means legal tender of the United States of America and equivalents thereof.

2.16    "**Causes of Action**" means all Avoidance Actions and any and all of Debtor's rights based upon actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

2.17    "**Chapter 11**" means chapter 11 of the Bankruptcy Code.

2.18    "**Claim**" means a claim against a Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

2.19    "**Classes**" means a category of Claims described in this Plan.

2.20    "**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.21    "**Confirmation Hearing**" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters including valuation of any collateral securing any secured claim under section 1129 of the Bankruptcy Code, as such hearing may be continued.

2.22    "**Confirmation Order**" means the order confirming this Plan pursuant to section 1129 and 1191 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to Debtors.

2.23    "**Disallowed Claim**" means a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in any of Debtor's Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.24    "**Disputed Claim**" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.25    "**Distribution**" means any distribution by Debtors or reorganized Debtors to a Holder of an Allowed Claim.

2.26    "**Effective Date**" means the date that is 15 days after the Confirmation Order is entered if no appeal is filed or if an appeal is filed no order staying the effect of the Confirmation Order has been entered.

2.27    "**Estate**" means the estate that was created by the commencement by Debtor of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that Debtor or such estate shall have had as of the

commencement of the Bankruptcy Case whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

2.28    "**Executory Contract or Unexpired Lease**" means all executory contracts and unexpired leases to which Debtor is a party.

2.29    "**Filing Date**" February 10, 2023.

2.30    "**Final Distribution**" means the Distribution by Debtors or reorganized Debtors that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.31    "**Final Distribution Date**" means the Distribution Date on which the Final Distribution is made.

2.32    "**Final Order**" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely.  In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.33    "**Holder**" means a holder of a Claim or Interest, as applicable.

2.34    "**Impaired**" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

2.35    "**Initial Distribution Date**" means the date a payment is first made under the Plan.

2.36    "**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

2.37    "**Person**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

2.38    "**Plan**" means this plan of reorganization as it may hereafter be corrected, amended, supplemented, restated, or modified.

2.39    "**Priority Claim**" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.40    "**Priority Tax Claim**" means a Claim against Debtors that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

2.41    "**Professional Compensation**" means (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by a Debtor and the fees and expenses of the Subchapter V Trustee, and (2) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.42    "**Retained Action**" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person.

2.43    "**Schedules**" means the Schedules of Assets and Liabilities Debtors filed in these Bankruptcy Cases, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.44    "**Secured Claim**" means a Claim against Debtor to the extent secured by a Lien on any property of Debtor on the Petition Date to the extent of the value of said property as provided in this Plan.

2.45    "**Unimpaired**" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.46    "**Unsecured Claim**" means any Claim against Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

**ARTICLE III**
**GENERAL PROVISIONS**

3.1    **Time**.    Whenever the time for the occurrence or happening of an event, including payments, as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Missouri, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

3.2    **Events of Default**.    Unless otherwise specifically provided in a class under the Plan, in the event of a default by Debtor in payments under the Plan or otherwise, the Holder must send written notice ("Default Notice") to Debtor at the addresses of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has provided the Holder with a written notice of a change of address. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has ten (10) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the 10th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). The Holder must send such Default Notice to Debtor via certified mail or recognized overnight carrier with a copy via email or fax and certified mail to Ron Weiss at the address reflected in the then current directory of the State of Bar of Missouri. Debtor shall have ten (10) days or thirty (30) days (as applicable) from Debtor's and Debtor's counsel's receipt of the Default Notice to cure such default. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required

Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example, a default under Class 4 shall not constitute a default under Class 1).

 3.3 **Notices**.  All notices under the Plan shall be in writing.  Unless otherwise specifically provided here in, all notices shall be sent to Debtor via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for Debtor in this Case, unless Debtor has provided such Holder with written notice of change of address for Debtor, with a copy via email or fax and certified mail Ron Weiss at the address reflected in the then current directory of the State Bar of Missouri.  Receipt of notice by Ron Weiss shall not be deemed receipt by Debtor of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.  Notices shall be deemed received: (i) on the day transmitted if sent via fax or email and (ii) on the day delivered if sent via nationally recognized overnight delivery service or Certified Mail Return Receipt.

## ARTICLE IV

## TREATMENT OF GROUPS OF CLAIMS
## NOT SUBJECT TO CLASSIFICATION OR OTHERWISE
## NOT REQUIRED TO VOTE FOR OR AGAINST THE PLAN

Debtors reserve the right to pay amount due under this Article IV in full at any time in accordance with the terms of the Plan without prepayment penalty

Administrative Creditors, Priority Creditors, and Priority Tax Claim Creditors shall be paid as follows:

4.1   **GROUP I - ADMINISTRATIVE CLAIMS**.  The Claims of Group I shall consist of, without limitation, Holders of Administrative Claims, if and when Allowed.  Administrative Claims may include, without limitation, (i) Berman, DeLeve, Kuchan & Chapman, LLC fees and costs, estimated at $40,000 (ii)  CFGI fees and costs estimated at $75,000; (iii) any other Professional (if any) retained by the Debtor, and (iv) claims that qualify as Administrative Claims under section 503(b), including applicable tax claims, and (vi) fees and costs assessed under 28 U.S.C. §1930, if any.

4.1.1   Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Subchapter V Case, (a) each Holder of an Allowed Administrative Claim – except Professional Fee Claims which shall be paid in accordance with sections 4.1.3 and 4.1.4 – will be paid in four equal installments, with the first payment due on the first business day of the first full month following the Effective Date, and the following installments due on the first business day of the month for the next three consecutive months, or (b) if the Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim, without any further action by the Debtor or Holder of such Allowed Administrative Claim.

4.1.2   Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court or as provided herein, unless previously filed, requests for payment of Allowed Administrative Claims, except for any Professional Fee Claims against the Reorganized Debtor, must be filed and served on the Debtor or Reorganized Debtor on

or before the Administrative Claims Bar Date pursuant to the procedures (if any) specified in this Plan, as it may be amended or confirmed.  Holders of Allowed Administrative Claims that are required to file and serve a request for payment of such Allowed Administrative Claims that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Claims against the Debtor or its property, and such Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be filed and served on the requesting party by the Administrative Claims Objection Bar Date.

4.1.3  **Professional Fee Claims**.  Notwithstanding any other provision of the Plan concerning Administrative Claims, any Professional seeking an award by the Bankruptcy Court of an Allowed Administrative Claim on account of Professional Fee Claims incurred prior to the Confirmation Date (a) shall file a final application for allowance of its Professional Fee Claim no later than the date 30 days after the Effective Date.

4.1.4  **Post-Confirmation Date Professional Fee Claims and Expenses**. Except as otherwise specifically provided in the Plan, on and after the Confirmation Date, the Debtor or Reorganized Debtor, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay the reasonable fees and expenses incurred by Professionals on or after the Confirmation Date.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor or Reorganized Debtor, as applicable, may pay any Professional in the ordinary course of business without any further notice, action, order, or approval of the Bankruptcy Court.

4.1.5  **Substantial Contribution Compensation and Expenses**.  Except as otherwise specifically provided in the Plan, any Person or Entity that requests compensation or expense reimbursement for making a substantial contribution to the Subchapter V Case pursuant to sections 503(b)(3), (4), or (5) must file an application and serve such application on Debtor's counsel, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, or the Bankruptcy Rules on or before the Administrative Claim Bar Date, or be forever barred from seeking such compensation or expense reimbursement.  All rights of the Debtor, Reorganized Debtor, the United States Trustee, and all other parties-in-interest to object to such request are expressly reserved.

4.2  **GROUP II - PRIORITY TAX CLAIMS.**  The Claims of Group II shall consist of the Allowed Claims that are entitled to priority under section 507(a)(8).

4.2.1  After payment in full of all Claims entitled to higher priority in accordance with section 507, the claimants of this Group shall receive on account of such Priority Tax Claim, twenty (20) deferred equal quarterly cash payments equal in

the aggregate to the amount of each Allowed Priority Tax Claim, plus interest calculated at the applicable Interest Rate. The first quarterly payment shall be made on the first Business Day after the third calendar month after the Effective Date. The foregoing notwithstanding, the final payment shall be due on the fifth anniversary of the Petition Date.

4.2.2   Group II consists, without limitation, of Holders of Priority Tax Claims, if and when Allowed. Holders of Priority Tax Claims may include, without limitation, the Missouri Department of Treasury and the Internal Revenue Service. The Debtor estimates that the Fulton Country Treasurer will assert a Priority Tax Claim in the amount of $0.00 for accrued but unpaid real estate taxes.

4.2.3   Upon the failure of the Debtor or the Reorganized Debtor, as applicable, to make any payments due on an Allowed Priority Tax Claim that is not cured on or within thirty (30 days) of receipt by the Reorganized Debtor of a written notice of default by the affected Priority Tax Claim Creditor, such Creditor may exercise all rights and remedies available under non-bankruptcy law for the collection of its entire Claim and/or seek appropriate relief in this Court.

4.2.4   Notwithstanding any provision in the Plan to the contrary, nothing shall affect the ability of a Creditor with a Priority Tax Claim to pursue to the extent allowed by non-bankruptcy law any non-Debtor for any liabilities that may be related to any tax liabilities owed by the Debtor to such Priority Tax Claim Creditor.

4.2.5   Except as otherwise set forth in this Plan, nothing herein shall affect the rights to assert setoff or recoupment and such rights are expressly preserved.

4.3      **OBJECTION TO PRIORITY CLAIMS.** The Debtor and/or Reorganized Debtor shall

have the right to challenge any Priority Claim through the claims objection process set forth in

Article VII of this Plan, which challenge may include, but need not be limited to, a challenge

to any penalty or interest portion of such Claim or the amount and the value of the property

which forms the basis for any assessment of taxes and the computation of the tax. The right

to challenge these Claims shall include, without limitation, an objection to the assessment of

any Debtor's real or personal property that may or may not have been made by the respective

taxing authority.

# ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtors reserve the right to object to any and all claims.

Debtors reserve the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

5.    **Class 1: Allowed Claim of Lead Bank**    The Allowed Claim of Lead Bank shall be bifurcated into the Allowed Secured Claim of Lead Bank and the Allowed Unsecured Claim of Lead Bank and shall be treated as follows:

5.1    The Allowed Secured Claim of Lead Bank shall be $1,360,000 and shall be paid as follows:

5.1.1    The Allowed Secured Claim of Lead Bank shall continue to accrue interest at the contract of 5.5%.

5.1.2    The Allowed Secured Claim of Lead Bank shall be amortized over 30 years with monthly payments of $7,722  beginning on the first day of the first month following the Effective Date.

5.1.3    A balloon payment of the remaining balance on the Allowed Secured Claim of Lead Bank shall be due in full on October 1, 2030.

5.2    The Allowed Unsecured Claim of Lead Bank shall be treated as follows:

5.2.1    Lead Bank shall receive a quarterly payment of $2,083 beginning January 1, 2024 for twelve consecutive quarters.

5.2.3    The holder of Class I Claims is impaired and entitled to vote to accept or reject the Plan.

5.3    **Class II**: **Claim of General Unsecured  Creditors other than Lead Bank.**

5.3.1    Class II shall consist of the general unsecured claims, including any purported secured claims with liens on the Real Estate junior to Lead Bank.  Beginning on

December January 1, 2024 and continuing for twelve consecutive quarters shall pay the Class II Creditors an amount equal to their pro-rata share of $2,083.

       5.3.2   The holders of Class II Claims are impaired and entitled to vote to accept or reject the Plan.

**5.4**    **Class III: Interest Claims.**

    Class III consists of the Holders of Allowed Interests in the Debtor.  The members of Class III are the current owners, that being, Noble Health Corp.  The Holders of Allowed Interests shall retain their Allowed Interests in the Reorganized Debtor in the same percentages as held prior to the Petition Date and shall guarantee payment of all Allowed Group I Claims.

       5.4.1   The holders of Class III Interest are unimpaired and not entitled to vote to accept or reject the Plan.

**ARTICLE 6**
**MEANS FOR THE IMPLEMENTATION OF THE PLAN**

    **6.1**    **Parties Responsible for Implementation of the Plan**.  Upon confirmation, Debtor will be charged with administration of the Case.  Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan. Debtor will file all post-confirmation reports required by the United States Trustee's office.   Debtors shall be authorized to reopen this case after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to Debtor.

    **6.2**    **Sources of Cash for Distribution**.    On the Effective Date, Debtor shall enter into a Lease with Blessed Health ("Tenant") for the Real Property owned by Debtor at a rate of $68,000 per month.   Tenant is an affiliate of Debtor as they have common ownership. Debtor shall use the rental payments to make the plan payments set forth above as well as  all

expenses related to the Real Property, including but not limited to (i) taxes, (ii) insurance, and (iii) maintenance.

As more fully set forth in the Disclosure Statement Tenant will fund its rental obligations through one or more subleases of the Real Property, which may be to an affiliate of Tenant.

6.3    **Preservation of Causes of Action**.  In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtors will retain and may (but is not required to) enforce all Retained Actions.  After the Effective Date, Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court.  Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of Debtor (or any successors holding such rights of action).  The failure of Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan.  Debtor reserves all causes of actions for breach of any former or now existing agreement or otherwise.  Neither the Disclosure Statement nor Plan shall be deemed a waiver of any right of Debtor to collect any receivable or right to payment under any applicable laws.  Debtor expressly reserves the right to exercise any and

all remedies available to Debtor regarding its accounts receivable or rights to payment at law or in equity, at such time or times as Debtor from time to time may elect. The Disclosure Statement and Plan are filed with a full reservation of rights.  Any failure by Debtor to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. Debtor hereby expressly reserve the right to declare any such other default or event of default and to take such other action as Debtor may be entitled to applicable law.  No delay on the part of Debtors in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. The Disclosure Statement and Plan are filed with a full reservation of rights.

6.4     **Effectuating Documents, Further Transactions**.  Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

6.5     **Further Authorization**.  Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

6.6     **Liabilities of Debtor**.      Debtor will not have any liabilities except those expressly stated or assumed under the Plan. Debtor will be responsible for all expenses incurred by Debtor in the ordinary course of business after the Filing Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the expense claim.

## ARTICLE VII
## DISTRIBUTIONS

7.1     Distributions.  Unless otherwise provided for herein, all Distributions under this Plan shall be made by Debtor.

7.2     Distributions of Cash.  Any Distribution of Cash made by Debtor pursuant to this Plan shall, at Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

7.3     No Interest on Claims or Interests.  Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a post-petition agreement in writing between the Debtor and a Holder, post-petition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim.

7.4     Delivery of Distributions.  The Distribution to a Holder of an Allowed Claim shall be made by Debtor (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor have not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Debtor is notified by such Holder in writing of such Holder's then-current address, at which time

Debtor shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within 6 months of return shall be irrevocably retained by Debtor and (ii) such Holder shall waive its right to such Distributions. All Distributions returned to Debtor and not claimed within six (6) months of return shall be irrevocably retained by Debtor notwithstanding any federal or state escheat laws to the contrary.  Each Holder must provide a completed W-9 to the Debtor within 30 Days of the Effective Date in order to be eligible to receive a Distribution.

If any Distribution on an Unsecured Claim ("Unsecured Distribution") is tendered by Debtor to a Holder of an Unsecured Claim and returned, refused or otherwise improperly returned ("Unsecured Distribution Refusal"), Debtor shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim.  Accordingly, in the event of an Unsecured Distribution Refusal, Debtor shall be relieved of any obligation to make said payment or Distribution and Debtor is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("Secured or Priority Distribution") is tendered by Debtor to a Holder of a Secured Claim or Priority Claim and returned, refused or otherwise improperly returned ("Secured or Priority Distribution Refusal"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied.  In the event of a Secured or Priority Distribution Refusal, any obligation of Debtor to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to Debtor that the Holder of such Secured Claim or Priority Claim seeks to receive payments from Debtor on

the Secured Claim or Priority Claim or otherwise seeks to enforce Debtor's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "Tolling Period").  Only in the event of such notice to Debtor shall Debtor's obligations to perform as to the applicable Secured Claim or Priority Claim resume.  The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the court.  Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against Debtor or the Debtor's property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved.  For purposes of clarification, Debtor shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and Debtor shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

    7.7    **Fractional Dollars**.  Any other provision of this Plan notwithstanding, Debtor shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, at Debtor's option the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

7.8   **Withholding Taxes**.  Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

## ARTICLE VIII
## PROCEDURES FOR TREATING
## AND RESOLVING DISPUTED CLAIMS

8.1   **Objections to Claims**.  Debtor shall be entitled to object to Claims, provided, however, that Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan.  Claims shall be resolved in accordance with LBR 3007-1.

8.2   **No Distributions Pending Allowance**.  Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

8.3.   **Resolution of Claims Objections**.  On and after the Effective Date, Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## ARTICLE IX

## PROVISION FOR ASSUMPTION OF
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

9.1    **Provisions Regarding Executory Contracts**.   Any unexpired leases or executory contracts which are not assumed under the Plan or are the subject of a pending motion to assume as of the Effective Date shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.  Under the terms of the Plan, a proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after the Confirmation Date.  Any claims which are not timely filed will be disallowed and discharged.

## ARTICLE X
## EFFECT OF PLAN ON CLAIMS AND INTERESTS

10.1    **Vesting of Debtor's Assets**. Except as otherwise explicitly provided in the Plan, upon the Court's entry of the Confirmation Order, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan.  As of the earlier of the Effective Date and the entry of a Final Decree, Debtors may operate their business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

10.2.    **Discharge of Debtor**.  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against Debtor, whether known or

unknown, including any and all liabilities of Debtor, Liens on Debtor's assets, obligations of Debtor, rights against Debtor, and Interests in Debtor or its Estates that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

10.3    **Setoffs**.    Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Debtor may have against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such claim that Debtor may have against such Holder.

10.4    **Exculpation and Limitation of Liability**.    Debtor's current and/or post-Filing Date and pre-Effective Date members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisor, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  No Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection

with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan.  Fees and expenses which Debtors owes to their Professionals are excluded from this Exculpation.

10.5   **Injunction**.   Upon entry of a Confirmation Order in this case, except as provided for in this Plan, the Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action except as provided for under this Plan against: (1) Debtor, or (2) against any property of Debtor. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction.

10.6   **Effect of Confirmation**.

10.6.1   **Binding Effect**.  On the Confirmation Date, the provisions of this Plan shall be binding on Debtor, the Estate, all Holders of Claims against or Interests in Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan. Creditors shall have no right to enforce a Claim against Debtor, even following a default under the Plan, except to the extent and amount that any Claim of such creditor is provided for and then due under the Plan.

10.6.2   **Effect of Confirmation on Automatic Stay**.  Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of § 362(a) of the Bankruptcy Code shall terminate.

10.6.3   **Filing of Reports**.  Debtor shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

10.6.4   **Post-Effective Date Retention of Professionals**.  Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and Debtors will employ and pay professionals in their ordinary course of business.

## ARTICLE XI
## <u>CONDITIONS PRECEDENT</u>

11.1     <u>**Conditions to the Effective Date**</u>.  The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.3 of this Plan.

11.2.1     The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not have been stayed;

11.2.2     All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan shall be in form and substance that is acceptable to Debtors in their reasonable discretion;

11.2.3     Debtors shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

11.3     <u>**Waiver of Conditions to Confirmation or Consummation**</u>.  The conditions set forth in Article 11.1 and Article 11.2 of this Plan may be waived, in whole or in part, by Debtors without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor).  The failure of Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE XII

## RETENTION AND SCOPE OF
## JURISDICTION OF THE BANKRUPTCY COURT

12.1    **Retention of Jurisdiction**.  Subsequent to the Effective Date, the Bankruptcy

Court shall have or retain jurisdiction for the following purposes:

12.1.1    To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

12.1.2    To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

12.1.3    To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

12.1.4    To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor;

12.1.5    To hear and rule upon all applications for Professional Compensation;

12.1.6    To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

12.1.7    To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

12.1.8    To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

12.1.9    To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

12.1.10   To determine any suit or proceeding brought by Debtor to recover property under any provisions of the Bankruptcy Code;

12.1.11   To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under this Plan;

12.1.12    To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

12.1.13    To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

12.1.14    To enter a final decree; and

12.1.15    To enforce and interpret any order or injunctions entered in this Bankruptcy Case.

12.2   **Alternative Jurisdiction**.  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter.  If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.  Notwithstanding anything to the contrary herein, Debtor shall be authorized to bring any action related to a lease, contract or account (including any account receivable due to Debtor) to which Debtor is a party in any state or local court having jurisdiction over such action.

12.3   **Final Decree**.  The Bankruptcy Court may, upon application of Debtor, at any time after "substantial consummation" of the Plan as defined in §1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing these cases pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be

required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications Debtor has brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action or otherwise administering the Plan; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause.

### ARTICLE XIII
### MISCELLANEOUS PROVISIONS

13.1    **Modification of the Plan**.  Debtor shall be allowed to modify this Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits.  Subject to the limitations contained in this Plan, pursuant to Article 13.1 of this Plan, Debtor may modify this Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.  In the event of any modification on or before confirmation, any votes to accept or reject this Plan shall be deemed to be votes to accept or reject this Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes.  Debtor reserves the right in accordance with section 1127 of the Bankruptcy Code to modify this Plan at any time before the Confirmation Date.

13.2    **Allocation of Plan Distributions Between Principal and Interest**.  To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent

permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

13.3   **Applicable Law**.   Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Missouri.

13.4   **Preparation of Estate Returns and Resolution of Tax Claims**.   Debtors shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

13.5   **Headings**.   The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

13.6   **Revocation of Plan**.   Debtor reserve the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

13.7   **No Admissions; Objection to Claims**.   Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity or person as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

13.8   **No Bar to Suits**.  Except as otherwise provided in Article 10 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop Debtor from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any disclosure statement filed by Debtor in connection with this Plan or whether or not any payment was made or is made on account of any Claim. Without limitation, Debtor retains and reserves the right to prosecute Retained Actions.

13.9   **Exhibits/Schedules**.  All exhibits and schedules to this Plan, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

13.10   **Conflicts**.   In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

## ARTICLE XIV
## TAX CONSEQUENCES

**TAX CONSEQUENCES RESULTING FROM CONFIRMATION OF THE PLAN CAN VARY GREATLY AMONG THE VARIOUS CLASSES OF CREDITORS AND HOLDERS OF INTERESTS, OR WITHIN EACH CLASS. SIGNIFICANT TAX CONSEQUENCES MAY OCCUR AS A RESULT OF CONFIRMATION OF THE PLAN UNDER THE INTERNAL REVENUE CODE AND PURSUANT TO STATE, LOCAL, AND FOREIGN TAX STATUTES. BECAUSE OF THE VARIOUS TAX ISSUES INVOLVED, THE DIFFERENCES IN THE NATURE OF THE CLAIMS OF VARIOUS CREDITORS, THE TAXPAYER STATUS AND METHODS OF ACCOUNTING AND PRIOR ACTIONS TAKEN BY CREDITORS WITH RESPECT TO THEIR CLAIMS, AS WELL AS THE POSSIBILITY THAT EVENTS SUBSEQUENT TO THE DATE HEREOF COULD CHANGE THE TAX CONSE-QUENCES, THIS DISCUSSION IS INTENDED TO BE GENERAL IN NATURE ONLY.  NO SPECIFIC TAX CONSEQUENCES TO ANY CREDITOR OR HOLDER OF AN INTEREST ARE REPRESENTED, IMPLIED, OR WARRANTED.  EACH**

HOLDER OF A CLAIM OR INTEREST SHOULD SEEK PROFESSIONAL TAX ADVICE.

THE PROPONENT ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN HOLDER OF A CLAIM OR INTEREST.  HOLDERS OF CLAIMS OR INTEREST ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS COVERING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION. NOTHING HEREIN SHOULD BE CONSTRUED AS THE DEBTOR, NOT ANYONE ELSE PROVIDING TAX ADVICE.

DATED:  August 01, 2023

Respectfully submitted,
Noble Health Real Estate LLC

By: */s/ Zev M. Reisman*
Zev M. Reisman
General Manager and Corporate Secretary

Respectfully submitted,
BERMAN, DeLEVE, KUCHAN & CHAPMAN, LLC

By: */s/ Ronald S. Weiss*
Ronald S. Weiss, MO #21215
Joel Pelofsky, MO #17929
1100 Main Street, Suite 2850
Kansas City, Missouri 64105
T: (816) 471-5900 / F: (816) 842-9955
rweiss@bdkc.com
jpelofsky@bdkc.com
ATTORNEY FOR DEBTOR and
DEBTOR-IN-POSSESSION