**UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| **NOBLE HEALTH REAL ESTATE, LLC** | ) | **Case No. 23-20051-DRD11** |
| **Debtor.** | ) | |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' AMENDED DISCLOSURE STATEMENT**

Pursuant to 28 U.S.C. § 586(a)(3) and 11 U.S.C. § 1125, the Acting United States Trustee respectfully objects to the Debtor's Disclosure Statement (Dkt. #107). In support hereof, the United States Trustee respectfully alleges as follows:

1. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157.

2. Debtor Noble Health Real Estate, LLC (the "Debtor") filed a Chapter 11 voluntary petition on February 10, 2023.

3. The Debtor owns certain real estate in Fulton County, Missouri that was previously utilized as a hospital and medical offices.

4. The Debtor acknowledges this is a single asset real estate case on the face of its' petition.

5. No Trustee or Examiner has been appointed.

6. The is case is substantially related to Noble Health Real Estate II, LLC, case number 23-20100, now pending in this Court. Both Debtors share common ownership and management, although there has been no request to jointly administer the cases.

7. Debtor's current ownership and management acquired the Debtor and related affiliates just prior to the case being filed. Debtor's current ownership, Pasteur Medical, LLC is a

Wyoming entity formed in December, 2022 ("Pasteur"). The Debtors' managers and principals also serve as the management of Pasteur Medical.

8. Since acquiring the Debtor, Pasteur and its' affiliates have paid the costs of this case, including all adequate protection, maintenance and ongoing costs, such as insurance and professional fees through equity contributions. However, neither Pasteur nor its' principals have specifically disclosed the source of this funding.

9. As the Disclosure Statement acknowledges, Pasteur and its' affiliates intend to operate the property in the future through newly created, or yet to be created affiliates. Throughout this case, a central issue has been the ability and likelihood of Pasteur or its' affiliates obtaining the appropriate licensing and regulatory approvals to reopen the hospital and generate income necessary to pay the lease contemplated by the plan.

**Disclosure Objections**

10. For the reasons set forth below, the United States Trustee contends that the Disclosure Statement portion is deficient and does not meet the "adequate information" standard set forth in 11 U.S.C. § 1125(a). A disclosure statement contains adequate information if it contains information "of a kind, and in sufficient detail . . . that would enable [] a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).

11. The "disclosure statement requirements are crucial to the effective functioning of the federal bankruptcy system. Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated." Ryan Operations G.P. v. Forrest Paint Co., 81 F.3d 355, 362 (3rd Cir. 1996).

12. The UST acknowledges that the Debtor has made significant strides and has greatly increased the amount of disclosure about the plan. Nevertheless, there are still some problematic aspects of the disclosure statement which bear discussion.

13. The Debtor has still not fixed the issues with the plan projections. The UST previously noted in his objections and at the prior hearing that the projection disclosures were insufficient for two reasons. First, the Debtor's projections still appear to conflate cash flow/income statements typically provided in bankruptcy cases with an earnings statement. Thus, the Debtor still includes non-cash line items, such as depreciation, in its cash flow and income projections, but then attempts to back them out later. This method of accounting is particularly confusing to any non-sophisticated creditors. Second, the bulk of the Debtor's post-confirmation expenses are grouped as "other expenses" which comprise some 65% of the Debtor's income on a monthly basis, but which lack any detail.

14. The lack of detail in the expense projections is complicated by the fact that an initial review of the draft master lease and subleases seems to assume that it will be the Debtor, and not the affiliated lessees, that are responsible for all maintenance and utilities on the real property. These are significant expenses for which projections and their related assumptions need to be explained.

15. Additionally, although the Debtor has indicated to the UST that it will be filing an affidavit that no Federal tax return was required, it has yet to do so. The UST has been holding the meeting of creditors open for months as the Debtor is required to provide proof of income tax filings or to explain why no such return is required.

16. Finally, although the UST recognizes that this is a disclosure hearing and not a

confirmation hearing, there are significant problems with the plan that almost certainly prevent its confirmation. Some of these issues were raised about the prior plan and disclosure statement, and some of these issues arise because of the increased disclosures mandated in the amended disclosure statement. The UST questions whether it is wise for the Debtor to go through the expenses of preparing, mailing and balloting a plan which is almost certainly unable to be confirmed in the current form and will need to be balloted again. Some of these issues include:

i. It appears that the plan treats priority and general unsecured creditors as part of the same class with the same treatment which almost certainly violates the order of priorities under the Code. Confusingly, the plan treats these two different types of creditors as different “groups” under the plan, but then treats them together for classification, or worse, does not treat the priority creditors at all (the claims register reflects priority claims of approximately $18,000);

ii. The plan proposes to bifurcate Lead Bank’s claim into secured and unsecured portions, but then treats the unsecured portions differently then general unsecured creditors in apparent violation of the Bankruptcy Code to gerrymander acceptance classes; and

iii. The amended disclosure statement reveals that the guarantees of the principals as to plan funding, on which feasibility is based, are only for six months post-confirmation. The disclosures now admit that the reopening plan will require a licensing plan extending well beyond that six month period.

iv. Further, the backstop line of credit is conditional and while it is clear that the Debtors feel the conditions to close will be met, it is unclear exactly what the conditions are. Thus, it is unclear how the plan could be feasible.

17. For the foregoing reasons, the Disclosure Statement provides insufficient information to be approved in its current form.

WHEREFORE the United States Trustee prays for an order denying approval of the proposed disclosure statement, and for whatever other relief the Court deems just and appropriate.

Respectfully submitted,

JERRY L. JENSEN
ACTING UNITED STATES TRUSTEE

PATTI J. STANLEY
ACTING ASSISTANT UNITED STATES TRUSTEE

By: /s/ Adam E. Miller
Adam E. Miller, Mo. Bar #65429
Trial Attorney
Office of the U.S. Trustee
400 East 9th St., Ste 3440
Kansas City, MO 64106
Telephone: (816) 512-1940
Telecopier: (816) 512-1967
Email: adam.e.miller@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the United States Trustee's Objection to the Disclosure Statement was served upon the Debtor by electronic notification pursuant to Fed. R. Bankr. P. 7005, incorporating Fed. R. Civ. P. 5, and to all parties requesting notice but not registered for electronic service, by first-class mail, postage prepaid, this 10th day of October, 2023.

By: /s/ Adam E. Miller
Adam E. Miller